IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THALIA F.,                              )
                                        )
                Plaintiff,              )
                                        )
        v.                              )       1:22CV377
                                        )
KILOLO KIJAKAZI,                        )
Acting Commissioner of Social Security, )
                                        )
                Defendant.              )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Thalia F. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on May 7, 2019, alleging a disability onset date of March 26, 2019 in both applications. (Tr. at 10, 291-305.)[1] Her applications were denied initially (Tr. at 129-54, 185-89) and upon reconsideration (Tr. at 155-84, 190-98). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at. 201-02.) On July 16, 2020, Plaintiff, along with

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

her attorney, attended the subsequent telephonic hearing. (Tr. at 103-28.) At the conclusion of the July hearing, the ALJ held the record open for the scheduling of consultative examinations. (Tr. at 127.) Accordingly, on November 2, 2021, the ALJ held a second telephonic hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 10.) Following this hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 26), and on March 16, 2022, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a

verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 12.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease, seizure disorder, obesity, CT scan with evidence of Reynaud's, major depressive disorder and anxiety disorder[.]

(Tr. at 12.) The ALJ found at step three that none of the impairments identified at step two, individually or in combination, met or equaled a disability listing. (Tr. at 13-15.) He therefore assessed Plaintiff's RFC and determined that she could perform light work with the following limitations:

> [Plaintiff] can lift and carry 100 pounds occasionally and 50 pounds frequently. She can sit for 45 minutes at a time and for 6 hours in an 8-hour day. She can stand/walk for 30 minutes at a time and for 4 hours in an 8-hour day. She

5

should never climb ladders, ropes, or scaffolds. She can frequently climb ramps and stairs. She can frequently balance. She can occasionally stoop, kneel, crouch and crawl. [Plaintiff] can perform simple, routine, and repetitive tasks at a non-production rate pace. She requires a low stress work environment with no more than occasional changes in workplace settings and routines. She can occasionally use judgment and decision-making capabilities. She can occasionally interact with supervisors, co-workers, and the general public. She should avoid exposure to hazards. She should never operate a motor vehicle or heavy equipment. She would be absent from work 1 day every 4 months due to her seizure disorder. She will be off task 5% of the workday secondary to blackout spells that occur twice a month plus other symptoms of migraine headaches aggravated by workplace stressors.

(Tr. at 15.)[4] Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff's past relevant work as an ophthalmic technician exceeded her RFC. (Tr. at 24.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in significant numbers in the national economy. (Tr. at 25-26.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 26.)

Plaintiff now raises two related challenges to the ALJ's decision. First, she contends that the ALJ failed to adequately evaluate the opinion of the consultative examiner, Zachary D. Seitz, PA-C, regarding Plaintiff's left eye impairment. Second, she argues that the ALJ "erred by failing to find that Plaintiff's left eye blindness is a severe impairment" at step two

---

[4] The RFC assessment, as set out here, appears to contain conflicting accounts of Plaintiff's exertional ability, as it states that Plaintiff is both limited to "light work," and "can lift and carry 100 pounds occasionally and 50 pounds frequently." (Tr. at 15.) However, as the vocational expert explained at the hearing, the additional standing and walking restrictions included in the RFC essentially limit Plaintiff to light work, and the ALJ ultimately relied on the expert's identification of light exertional level jobs at step five of the sequential analysis. (See Tr. at 25-26, 95-96.)

of the sequential analysis. (Pl.'s Br. [Doc. #13] at 1.) After a thorough review of the record, the Court finds that neither of these arguments require remand.

   A. Mr. Seitz' Opinion

In considering Plaintiff's contentions regarding her left eye impairment, the Court finds that it is helpful to first note the larger context. Plaintiff asserted disability in this case based on bulging cervical discs, arthritis, a damaged sciatic nerve, bilateral carpal tunnel syndrome, muscle spasms, sleep apnea, depression, groin tendonitis, migraines, bilateral plantar fasciitis, mild seizures, acid reflux, anxiety, and hypertension. The ALJ addressed these impairments in detail in a 16-page opinion, reviewing over 900 pages of medical records, and Plaintiff does not challenge the ALJ's determination with respect to any of these alleged impairments. Plaintiff did not ever allege any work-related limitations based on her left eye impairment. Nevertheless, medical records reflected that Plaintiff had a history of left eye blindness as a result of exposure to toxoplasmosis as a child, and the Consultative Examiner, Zachary D. Seitz, PA-C, included this information in his report. Given this context, the ALJ's decision does not include as extensive a discussion of Plaintiff's left eye impairment as the other impairments on which she actually relied in bringing her claim, but the ALJ does address Plaintiff's left eye impairment at multiple points in the decision and specifically includes limitations suggested by Consultative Examiner Seitz.

In the decision, the ALJ acknowledged that Mr. Seitz performed a consultative examination of Plaintiff on July 21, 2021, and noted, among other findings, that Plaintiff "would have limitation with left peripheral vision and depth perception." (Tr. at 21, 24, 930.) As summarized by the ALJ:

7

> On July 21, 2021, the claimant underwent a consultative medical examination with Zachary Seitz, PA-C. The claimant reported arthritis in her spine, carpal tunnel in both hands, sleep apnea, depression, migraine headaches, mild seizures, acid reflux, anxiety, and high blood pressure. . . . The claimant reported left eye blindness. . . . Visual acuity in the right eye was 20/20 and in the left eye it was less than 20/200. The rest of her physical exam findings were generally unremarkable. . . . The consultative examiner indicated there was not enough evidence to state a functional limitation; however, the report indicates the claimant was able to lift, carry, handle and manipulate light objects, and in the medical source statement he indicated the claimant could lift and carry up to 20 pounds continuously; up to 50 pounds frequently; and up to 100 pounds occasionally. He stated the claimant could sit for 8 hours in an 8-hour day; stand for 4 hours in an 8-hour day; and walk for 4 hours in an 8-hour day. He indicated the claimant would have limitation with left peripheral vision and depth perception and he recommended that she should not operate heavy machinery or perform tasks that required great, intricate depth perception. She had no limitations with bending, stooping, crouching, and squatting; however, in the medical source statement he indicated that she should never climb ladders or scaffolds but could frequently climb ramps and stairs. She could frequently balance and occasionally stoop, kneel, couch and crawl. She had no manipulative or communicative limitations. He indicated the claimant should not work at unprotected heights.

(Tr. at 20-21.) Thus, the ALJ noted the issue regarding Plaintiff's left eye, and included details regarding the examination of Consultative Examiner Seitz measuring Plaintiff's visual acuity, which measured less than 20/200 in her left eye, while remaining 20/20 in her right eye and 20/20 with both eyes. (Tr. at 20, 927.) This is consistent with Plaintiff's treatment records reflecting Plaintiff's chronic left eye esotropia (see Tr. at 900) and toxoplasmosis infection during childhood (see Tr. at 447-48, 627, 1297), but with no visual disturbance, full field of vision, and intact extraocular movement (Tr. at 451, 633, 900, 962, 991, 1073, 1306, 1321.) This is also consistent with Plaintiff's own functional report indicating no limitations in "[s]eeing." (Tr. at 341.)

In evaluating the opinion evidence, the ALJ considered Mr. Seitz' examination findings and opinions at length and found them persuasive, as they were "consistent with the records." (Tr. at 20-21, 24.)

> The consultative physician's assistant at Ex. 14F indicated there was not enough evidence to state a functional limitation; however, the report indicates the claimant was able to lift, carry, handle and manipulate light objects, and in the medical source statement he indicated the claimant could lift and carry up to 20 pounds continuously; up to 50 pounds frequently; and up to 100 pounds occasionally. He stated the claimant could sit for 8 hours in an 8-hour day; stand for 4 hours in an 8-hour day; and walk for 4 hours in an 8-hour day. He indicated the claimant would have limitation with left peripheral vision and depth perception and he recommended that she should not operate heavy machinery or perform tasks that required great, intricate depth perception. She had no limitations with bending, stooping, crouching and squatting; however in the medical source statement he indicated that she should never climb ladders or scaffolds but could frequently climb ramps and stairs. She could frequently balance and occasionally stoop, kneel, couch and crawl. She had no manipulative or communicative limitations. He indicated the claimant should not work at unprotected heights. This opinion is persuasive as it is consistent with the records.

(Tr. at 24.) The ALJ then adopted the material limitations suggested by Mr. Seitz when assessing Plaintiff's RFC, including the limitation that Plaintiff should not operate heavy equipment and not work around hazards. (Compare Tr. at 15, with Tr. 24.) Thus, this is not a case where the ALJ failed to consider or address an opinion or an impairment.

Plaintiff nevertheless contends that the ALJ erred by failing to include Mr. Seitz's suggested limitation on performing "tasks that required great, intricate depth perception." (Tr. at 24, 930.) However, in considering this contention, the Court first notes that, as set out above, the ALJ extensively discussed Mr. Seitz's opinion and examination, which reflected Plaintiff's overall visual acuity of 20/20, and the medical record reflects no other evidence of any visual disturbance or less than full visual field, and there was no contention by Plaintiff

9

that she had any visual limitations impacting her ability to work. In addition, the ALJ adopted Mr. Seitz's suggested limitations regarding heavy equipment and exposure to hazards. In the circumstances presented, there does not appear to be any clear error in the ALJ's evaluation, and substantial evidence supports the ALJ's ultimate determination.

Moreover, even assuming the ALJ erred in failing to specifically address the limitation on performing "tasks that required great, intricate depth perception," Plaintiff has not shown harmful error. See Shinseki v. Sanders, 556 U.S. 396, 407-10 (2009). As noted by Defendant, neither job identified by the vocational expert requires depth perception. The Dictionary of Occupational Titles ("DOT") includes frequent near acuity among the requirements for the jobs of Router (DOT 222.587-038, 1991 WL 672123) and Marker (DOT 209.587-034, 1991 WL 671802). However, with regard to depth perception, far acuity, and field of vision, the DOT specifically states that these activities are "Not Present—Activity or condition does not exist." DOT 222.587-038, 1991 WL 672123; DOT 209.587-034, 1991 WL 671802. Thus, even if the additional limitation suggested by Mr. Seitz is considered, there is no inconsistency with the DOT and no basis to contend that Plaintiff could not still perform the jobs of Router and Marker. Therefore, any error is harmless, and Plaintiff fails to show that remand is warranted in this instance.

B. Step Two

In a related argument, Plaintiff contends that the ALJ erred in failing to include Plaintiff's loss of visual acuity in the left eye among her severe impairments at step two of the sequential analysis. (Pl.'s Br. at 8-9.) As Plaintiff correctly notes, "[a]n impairment is not severe 'only if it is a slight abnormality which has such a minimal effect on the individual that

10

it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" (Pl.'s Br. at 8-9) (quoting Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984)). Plaintiff therefore argues that her "left eye blindness is a severe impairment because the degree of limitation she experiences with left visual acuity and left depth perception is obviously more than a 'slight abnormality' and would certainly interfere with her ability to perform certain types of work." (Pl.'s Br. at 9.) Nevertheless, as noted above, Plaintiff did not allege any visual impairments in her disability applications or at any point during the disability proceedings prior to this appeal. Plaintiff sought no treatment for visual impairments during the time period at issue, and the incidental mention of her left eye issues reflects that a toxoplasmosis infection damaged her optic nerve during childhood, decades before the alleged onset date in this case, and without any suggested impact on her 20-year work history. (Tr. at 627, 925, 1297.) Although lifelong impairments may provide a basis for disability in some instances, it does not appear that Plaintiff ever raised this possibility, or mentioned her visual problems at all, before the ALJ. The only mention of Plaintiff's left eye impairment having any effect on her ability to work came in the form of Mr. Seitz' opinion evidence.

Notably, Plaintiff acknowledges that an ALJ's omission of a severe impairment at step two does not constitute reversible error where the ALJ considers that impairment in subsequent steps of the analysis, as required by the regulations. (Pl.'s Br. at 9) (citing Tarpley v. Astrue, No. 5:08-CV-271-FL, 2009 WL 1649774, at *2 (E.D.N.C. Jun. 1, 2009)); see also 42 U.S.C. § 423(d)(2)(B) (providing that an ALJ must consider the combined effect of all of a claimant's impairments, both severe and non-severe, when assessing her ability to work);

11

McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) ("As long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless."). Here, the ALJ considered Plaintiff's left eye impairment in setting the RFC, as reflected in the discussions set out at length above regarding the Consultative Examination. As discussed above, the ALJ included limitations in the RFC suggested by the Consultative Examiner as a result of Plaintiff's left eye impairment, including a limitation precluding her from working with heavy equipment and exposure to hazards. Thus, any error in failing to list Plaintiff's left eye impairment as severe at step two is harmless.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #12] is DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #16] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 25th day of September, 2023.

/s/ Joi Elizabeth Peake
United States Magistrate Judge